**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

VOLTAGE PICTURES, LLC,

*Petitioner-Appellee,*

v.

GUSSI, S.A. DE C.V.,

*Respondent-Appellant.*

No. 23-55123

D.C. No.
2:21-cv-04751-
FLA-RAO

OPINION

Appeal from the United States District Court
for the Central District of California
Fernando L. Aenlle-Rocha, District Judge, Presiding

Argued and Submitted December 6, 2023
Pasadena, California

Filed February 5, 2024

Before: MILAN D. SMITH, JR., KENNETH K. LEE, and
LAWRENCE VANDYKE, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

# SUMMARY[*]

## Arbitration / Service

The panel affirmed the district court's judgment confirming an arbitral award in favor of Voltage Pictures, LLC (Voltage), and against Gussi S.A. de C.V. (Gussi SA), in a case arising from a dispute concerning the parties' respective rights and obligations under their Distribution and License Agreement (DLA).

The panel held that the district court had jurisdiction to hear the motion to confirm the arbitral award but not for the reasons it articulated. The district court ruled that it had diversity jurisdiction, but the panel was not satisfied that it did where the record below did not indicate the citizenship of Voltage's members. The panel nevertheless held that Section 203 of Chapter 2 of the Federal Arbitration Act (FAA) and 28 U.S.C. § 1331 gave the district court an independent basis for exercising jurisdiction.

The panel held that the district court erred in ruling that California law governed service of Voltage's notice of motion to confirm the arbitral award. Federal procedural law generally governs service when a party files an action in federal district court unless the party-to-be-served waives this protection. The panel looked to the DLA, which was governed by California law, and held that the parties agreed to accept service of a confirmation motion pursuant to the law that applied to such motions in the prevailing party's chosen confirmation forum. Because Voltage filed its

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

confirmation motion in a federal court, the panel analyzed whether service of the motion on Gussi SA complied with federal law.

Applying federal law, the panel held that Voltage sufficiently served notice to confirm the arbitral award by mailing its motion papers to Gussi SA's counsel. Gussi SA does not reside in the district where the award was made, and Voltage did not serve Gussi SA by a U.S. marshal. Gussi SA contended that service of Voltage's notice of motion was insufficient pursuant to § 9 of the FAA, which requires service by a U.S. marshal. The panel held that later amendments to the Federal Rules of Civil Procedure did not implicitly repeal § 9's marshal requirement, and thus it is still valid where it applies. However, § 9's nonresident service provision does not apply to the service of notice of an application to confirm a foreign arbitral award governed by the New York convention if the adverse party is not available for service in any judicial district of the United States at the time of service. When § 9 does not apply, section 6 of the FAA and Fed. R. Civ. P. 5(b)—the federal procedural law governing how service of a motion is made— fill the gap. Therefore, Voltage properly effected service by mailing its motion papers to Gussi SA's attorney pursuant to Rule 5(b). Service of notice was sufficient under federal law, and the district court was empowered to enter judgment against Gussi SA in confirming the award.

Finally, the panel held that the district court did not abuse its discretion when it declined to extend comity to a purported Mexican court order enjoining Voltage from seeking to confirm the award in the United States because Gussi SA did not certify the genuineness of the purported Mexican court order or the accompanying translation.

**COUNSEL**

Charles M. Coate (argued), Hamrick & Evans LLP, Burbank, California, for Respondent-Appellant.

Elaine Li (argued) and Jeremiah Reynolds, Eisner LLP, Beverly Hills, California, for Petitioner-Appellee.

**OPINION**

M. SMITH, Circuit Judge:

On June 10, 2021, Voltage Pictures, LLC (Voltage) filed a motion in the United States District Court for the Central District of California to confirm an arbitral award that was issued against Gussi S.A. de C.V. (Gussi SA) earlier that year. After hearing from both parties, the district court confirmed the award and entered judgment in favor of Voltage. On appeal, Gussi SA maintains that service of the motion to confirm the award was insufficient under federal law and that parallel proceedings in Mexico required the district court to abstain from confirming the arbitral award. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 9 U.S.C. § 16(a), and we affirm.

**FACTUAL BACKGROUND**

Voltage is a film production and distribution limited liability company based in Los Angeles.[1] Gussi SA is a Mexican corporation with its principal place of business in Mexico City. On November 7, 2018, Voltage, on behalf of non-party EVE Nevada, LLC, entered into a Distribution and

---

[1] The record does not indicate the citizenship of Voltage's members.

License Agreement (the DLA) with Gussi SA to license the distribution rights of the film *Ava* in Latin America on an exclusive basis, and for pan-regional television services in Spanish in additional foreign countries on a non-exclusive basis.

Exhibit A to the DLA contains an arbitration provision, which states that "[a]ny dispute arising out of or relating to this Agreement will be resolved by final binding arbitration under the [Independent Film & Television Alliance (IFTA)] Rules [for International Arbitration] . . . in effect at the time of the notice of arbitration is filed . . . ." It further states that Gussi SA "consents and submits to the jurisdiction of the state and federal courts located in Los Angeles County, California with respect to any action arising out of or relating to this Agreement or the Picture," and that the DLA "shall be covered by and interpreted in accordance with the laws of the State of California (without regard to the conflict of laws provisions thereof)." It also provides that "[t]he Parties hereby submit to the jurisdiction of the courts in [Los Angeles County, California] to compel arbitration or to confirm an arbitration award." Most significantly to this appeal, the arbitration provision declares that "[t]he Parties agree to accept service of process in accordance with the IFTA Rules."

IFTA Rule 12 is titled "The Award." IFTA Rule 12.5 provides, in part, that:

> Service of any petition, summons or other process necessary to obtain confirmation of the Arbitrator's award may be accomplished by any procedure authorized by applicable law, Treaty or Convention, except that the parties waive application of the Hague

Convention for Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters with respect to service of process.

Immediately below IFTA Rule 12.5 is IFTA Rule 13, titled "Applicable Law." IFTA Rule 13.1 provides, in full, that:

The Arbitrator shall apply the laws of the State of California to all arbitrations conducted under these Rules unless the parties by mutual agreement or by the contract to be enforced provide that the Arbitrator shall apply the law of one other jurisdiction, or the Arbitrator for good cause designates another location to be the situs of the arbitration in which case the Arbitrator shall have the discretion to apply for good cause the law of the situs of the arbitration.

## PROCEDURAL HISTORY

On July 22, 2020, Voltage filed and served its demand for arbitration against Gussi SA after a dispute arose between Voltage and Gussi SA regarding their respective rights and obligations under the DLA. Eventually, both parties participated in an arbitration over Zoom on December 3 and 4, 2020, with the proceedings based in Los Angeles. On June 7, 2021, the Arbitrator issued a final arbitral award in Voltage's favor. Shortly thereafter, Voltage mailed a notice of motion to confirm the arbitral award and the accompanying motion papers to the attorneys who had represented Gussi SA in the underlying arbitration. On June 10, 2021, Voltage filed its motion to confirm the

award in the United States District Court for the Central District of California.  In the motion, Voltage alleged that the district court had diversity jurisdiction over the matter pursuant to 28 U.S.C. § 1332(a)(2).

On June 21, 2021, Gussi SA filed its first motion to quash service of and to dismiss Voltage's motion to confirm the arbitral award.  On March 28, 2022, after the district court held that it had diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) to adjudicate the motion, the district court ruled that "the parties agreed to service as allowed under California law" by incorporating IFTA Rule 12.5 into the DLA.  However, the court also held that Voltage "fail[ed] to demonstrate it completed service of process on" Gussi SA in accordance with California law.  Accordingly, the court granted in part the motion to quash service and ordered Voltage to complete service of the motion to confirm the arbitral award "within 60 days of th[e] order."

The next day, Voltage mailed its notice of motion and accompanying motion papers to Gussi SA's address in Mexico via Federal Express and requested the return of a signed receipt upon delivery.  A few days later, Voltage received a return receipt, signed by Silvia Torres, who had been designated by Gussi SA as its representative for service of process during the underlying arbitration proceedings.  Then, on May 3, 2022, Voltage delivered the same papers through personal service on the registered service agent for Gussi, Inc., a Delaware corporation registered to do business in California and with its executive offices located in Los Angeles, California.  Gussi SA and Gussi, Inc. are owned by the same Mexican holding company.  Gussi, Inc. has only three employees, two of whom negotiated the DLA on behalf of Gussi SA.

On June 3, 2022, Gussi SA filed a further motion to quash service of process. Despite the district court already having ruled that California law governed service of process, Gussi SA reargued that federal procedural law—specifically, Federal Rules of Civil Procedure 4(h)(2) & 4(f)—and not California law, applied to service of process. Gussi SA also contended that, even if California law applied, Voltage's service was invalid. On December 6, 2022, the court reaffirmed its holding that California law governed service of the motion and also ruled that Voltage sufficiently served Gussi SA on May 3, 2022, through personal service on the registered service agent for Gussi, Inc., which the district court deemed to be Gussi SA's "general manager" pursuant to § 416.10(d) of the California Code of Civil Procedure and § 2110 of the California Corporations Code.

Within two days of the district court's order denying Gussi SA's further motion to quash service, Gussi SA notified Voltage of an action that Gussi SA supposedly brought against Voltage in Mexico earlier that year. According to Gussi SA, a Mexican court issued an order enjoining Voltage from enforcing the arbitral award on February 2, 2022. Therefore, Gussi SA requested that the district court dismiss or stay Voltage's motion to confirm the arbitral award based on the Mexican court order. The district court ultimately denied this motion, finding that Gussi SA failed to certify the genuineness of the document purporting to be a Mexican court order and the accompanying translation. Accordingly, the district court found that there was no judicially noticeable court order to which the district court could extend comity. On January 23, 2023, the district court entered judgment confirming the arbitral award in all respects. Gussi SA timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 9 U.S.C. § 16(a). *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 409 (9th Cir. 2011). We review de novo a district court's determination that it had subject matter jurisdiction over an action and its determination that service of process was sufficient. *United States v. Peninsula Commc'ns, Inc.*, 287 F.3d 832, 836 (9th Cir. 2002) (subject matter jurisdiction); *In re Focus Media Inc.*, 387 F.3d 1077, 1081 (9th Cir. 2004) (sufficiency of service). We review for abuse of discretion a district court's evidentiary rulings and its decisions regarding international comity. *Wagner v. Cnty. of Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2013) (evidentiary rulings); *Mujica v. AirScan Inc.*, 771 F.3d 580, 589 (9th Cir. 2014) (international comity). We may affirm a district court's decision "on any ground supported by the record even if not explicitly relied upon by the district court." *Johnson v. Barr*, 79 F.4th 996, 1003 (9th Cir. 2023).

## ANALYSIS

## I. The District Court Had Jurisdiction to Hear the Motion to Confirm the Arbitral Award but Not for the Reasons It Articulated.

The district court correctly recognized that "[t]he provisions of 9 U.S.C. § 9," which govern motions to confirm an arbitral award, "do not in themselves confer subject matter jurisdiction on a federal district court." *See Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 969 (9th Cir. 1981); *see also United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 918–19 (9th Cir. 2009). Therefore, the district court had to identify an independent source of subject matter jurisdiction to hear Voltage's motion. The district court ultimately ruled that it had diversity jurisdiction

pursuant to 28 U.S.C. § 1332(a)(2), but we are not satisfied that it did. *See generally Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it." (internal quotation marks omitted)).

Section 1332(a)(2) vests federal district courts with subject matter jurisdiction over suits involving "citizens of a State and citizens or subjects of a foreign state," 28 U.S.C. § 1332(a)(2), but not over suits in which "aliens [are] on both sides of the case," *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 569 (2004). Section 1332(a)(3), by contrast, does confer jurisdiction over suits in which aliens are on both sides of the case, but only if there are also diverse U.S. citizens on both sides. *See Transure, Inc. v. Marsh and McLennan, Inc.*, 766 F.2d 1297, 1298–99 (9th Cir. 1985) (citing 28 U.S.C. § 1332(a)(3)). "A limited liability company is a citizen of every state of which its owners/members are citizens, not the state in which it was formed or does business." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 612 (9th Cir. 2016) (internal quotation marks omitted).

The record below does not indicate the citizenship of Voltage's members. The record merely indicates that Voltage has its principal place of business in California. If Voltage were a corporation, the fact that its principal place of business is in California would be sufficient to render it a citizen there. *See* 28 U.S.C. § 1332(c)(1). However, Voltage is not a corporation—it is a limited liability company. The citizenship of a limited liability company is determined by the citizenship of its members. *NewGen*, 840 F.3d at 612. If one of Voltage's members is a citizen or subject of a foreign

state, then diversity of citizenship pursuant to § 1332(a)(2) would be lacking. *Cf. Grupo Dataflux*, 541 U.S. at 569 ("Because [the limited partnership] had two partners who were Mexican citizens at the time of filing, the partnership was a Mexican citizen . . . . And because the defendant . . . was a Mexican corporation, aliens were on both sides of the case, and the requisite diversity was therefore absent.").

In advance of oral argument, we ordered the parties "to be prepared to address . . . [w]hether the district court erred in concluding it had 28 U.S.C. § 1332(a)(2) diversity jurisdiction over the case despite not inquiring into the citizenship of the members of Voltage . . . ." At oral argument, we asked Voltage's counsel to clarify whether any of Voltage's members are citizens or subjects of a foreign state. Voltage's counsel declined this opportunity. Accordingly, on appeal, we still do not have enough information to determine whether the district court had § 1332(a) diversity jurisdiction over the matter.

Nevertheless, we hold that 9 U.S.C. § 203 and 28 U.S.C. § 1331 provided the district court with an independent basis for exercising jurisdiction over the matter. *See generally Johnson*, 79 F.4th at 1003 (stating that we may affirm a district court's decision "on any ground supported by the record even if not explicitly relied upon by the district court"). As we have stated previously, Section 203 of Chapter 2 of the Federal Arbitration Act (FAA) vests federal district courts with subject matter jurisdiction over motions seeking to confirm non-domestic arbitral awards. *See HayDay Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F.4th 1232, 1239 (9th Cir. 2022) ("[The parties' confirmation] petition stated that it was an action to confirm an arbitration award, and stated that the award was between at least one foreign party. Those facts trigger § 203."). Here, it is undisputed

that the arbitral award at issue is "between at least one foreign party" because Gussi SA is a citizen of Mexico.  *Id.*  Accordingly, we are satisfied that Section 203 provided the district court with an independent basis for exercising subject matter jurisdiction over the motion.**[2]**

## II. The District Court Erred in Ruling that California Law Governed Service of Voltage's Notice of Motion to Confirm the Arbitral Award.

Whereas subject matter jurisdiction refers to a court's power to hear a certain type of case, *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009), personal jurisdiction refers to a court's power over a particular defendant, *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).  On appeal, Gussi SA objects to the district court's exercise of the latter.  However, it is undisputed that Gussi SA, by entering into the DLA, "consent[ed] and submit[ted] to the" district court exercising personal jurisdiction over it

---

[2] The fact that Voltage failed to expressly invoke Section 203 in its motion to confirm the arbitral award does not change our conclusion. *See HayDay*, 55 F.4th at 1239 (holding that a confirmation petition's "state[ment] that the award was between at least one foreign party" is sufficient to "trigger § 203[]" even if the petition itself does not "explicitly invoke[]" § 203).  While it is true that the Supreme Court has ruled that courts may not "look through" an application to confirm an arbitral award to the underlying substantive controversy to search for an independent source of federal subject matter jurisdiction that does not appear on the face of the application, *Badgerow v. Walters*, 596 U.S. 1, 5 (2022), that is not what we are doing here.  Here, we are looking to the face of Voltage's motion itself, which clearly states Gussi SA's Mexican citizenship.  *Cf. id.* at 9 (acknowledging that if "the face of the application itself[]" provides the requisite jurisdictional facts establishing § 1332(a) diversity jurisdiction, "then § 1332(a) gives the court diversity jurisdiction[]" over the application).

because the district court is a "federal court[] located in Los Angeles County, California . . . ." *See Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964) (observing that "parties to a contract may agree in advance to submit to the jurisdiction of a given court"). Accordingly, the only basis for Gussi SA to contest the district court's exercise of personal jurisdiction over it would be insufficient service of Voltage's notice of motion to confirm the arbitral award. *See generally S.E.C. v. Ross*, 504 F.3d 1130, 1138–39 (9th Cir. 2007) (explaining that "in the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property").

Gussi SA maintains that it was never properly served with notice of Voltage's motion to confirm the arbitral award, and therefore, the district court lacked personal jurisdiction over Gussi SA to confirm the award. For us to evaluate whether service of Voltage's motion on Gussi SA was sufficient, we must first determine what law governs service of a confirmation motion. The district court ruled that California law governs service, but Gussi SA argues that federal procedural law governs. We agree with Gussi SA.

When a party files an action in federal district court, federal procedural law generally governs service, *see, e.g.*, *Brockmeyer v. May*, 383 F.3d 798, 799–800 (9th Cir. 2004) (ruling that Federal Rule of Civil Procedure 4 governs service of a summons and complaint in federal district court), unless the party-to-be-served waived its protections, *see Nat'l Equip. Rental*, 375 U.S. at 316 ("[P]arties to a contract may agree in advance . . . to permit notice to be served by the opposing party, or even to waive notice altogether."); *see also Rockefeller Tech. Invs. (Asia) VII v. Changzhou SinoType Tech. Co.*, 9 Cal. 5th 125, 140–41 (Cal. 2020). We must therefore look to the DLA, which is

governed by California law, to determine whether such waiver occurred.

By entering into the DLA, Voltage and Gussi SA clearly "agree[d] to accept service of process in accordance with the IFTA Rules."  Therefore, whether Gussi SA consented to accept service of the motion pursuant to California law (even if the motion is filed in federal court) hinges on our interpretation of the IFTA Rules governing service.  The IFTA Rule governing service of a subsequent motion to confirm an arbitral award is IFTA Rule 12.5, which provides, in relevant part, that:

> Service of any petition, summons or other process necessary to obtain confirmation of the Arbitrator's award may be accomplished by any procedure authorized by applicable law, Treaty or Convention, except that the parties waive application of the Hague Convention for Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters with respect to service of process.

To date, at least two district courts in the Ninth Circuit, including the court below, have concluded that the "applicable law" referenced in IFTA Rule 12.5, which governs the service of a motion to confirm an arbitral award, is necessarily California law.  *See Voltage Pictures, LLC v. Gussi, S.A. De C.V.*, 2022 WL 18397529, at \*3 (C.D. Cal. Mar. 28, 2022); *Voltage Pictures, LLC v. Gulf Film, LLC*, 2018 WL 2110937, at \*3 (C.D. Cal. Apr. 17, 2018).  Those courts' justification is simple: because "IFTA Rule 12.5 provides [for service of confirmation motion to] 'be

accomplished by any procedure authorized by applicable law,'" and "IFTA Rule 13.1 defines 'applicable law' as 'the laws of the State of California,'" California law necessarily governs service of a confirmation motion, no matter the forum in which the prevailing party chooses to file its motion. *Gussi*, 2022 WL 18397529, at *3; *see Gulf Film*, 2018 WL 2110937, at *3.

If only it were that simple. IFTA Rule 13.1 does not actually "define 'applicable law'" in the way that Voltage or the district court suggests that it does. In fact, the words "applicable law" do not appear anywhere in IFTA Rule 13.1. The words "applicable law" only appear in the header of IFTA Rule 13. IFTA Rule 13.1 itself only provides that "[t]he Arbitrator shall apply the laws of the State of California to all arbitrations conducted under the[] [IFTA] Rules . . . ." The rule says nothing about the procedural law a court must apply when adjudicating a subsequent petition to confirm an arbitration award issued pursuant to the IFTA Rules. Nor does any other IFTA Rule.

Moreover, IFTA Rule 12.5 does not merely state that service must be accomplished by applicable law. Rather, it provides that service "may be accomplished by any procedure authorized by applicable law, Treaty or Convention, except that the parties waive application of the Hague Convention . . . with respect to service of process." This language indicates that any law, treaty, or convention (except for the Hague Convention) that applies in the prevailing party's chosen confirmation forum may govern service. The drafters of the IFTA Rules could have easily provided that service of a confirmation motion must be accomplished by California law, regardless of the prevailing party's chosen confirmation forum, but they did not.

We therefore reject the district court's ruling that by agreeing to abide by IFTA Rule 12.5, Gussi SA voluntarily waived its right to be served with notice of Voltage's motion in compliance with federal law in federal court. Instead, we hold that, by incorporating IFTA Rule 12.5 into the DLA, Voltage and Gussi SA both agreed to accept service of a confirmation motion pursuant to any law, treaty, or convention (except for the Hague Convention) that applies to such motions in the prevailing party's chosen confirmation forum. Because Voltage filed its confirmation motion in a federal court, we must analyze whether service of the motion on Gussi SA complied with whatever federal law applies to such motions.

## III. Voltage Sufficiently Served Notice of Its Motion to Confirm the Arbitral Award by Mailing Its Motion Papers to Gussi SA's Counsel.

Rule 4 of the Federal Rules of Civil Procedure governs service of summons and a complaint in federal district court. *Brockmeyer*, 383 F.3d at 800. However, this case does not concern the service of summons and a complaint. Rather, it concerns the service of a prevailing party's notice of motion to confirm an arbitral award. Rule 81(a)(6)(B) provides that the Federal Rules of Civil Procedure "govern proceedings under the [FAA] . . . relating to arbitration," except as the FAA "provide[s] other procedures." Fed. R. Civ. P. 81(a)(6), (B).

Section 6 of the FAA provides that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." 9 U.S.C. § 6. In federal district court, Rule 5 generally governs the service of "written motion[s]" and "notice[s] . . . ." Fed. R.

Civ. P. 5(a)(1)(D), (E).   Section 9 of the FAA, however, provides that:

> Notice of the application [to confirm an arbitral award] shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding.  If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court.  If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.

9 U.S.C. § 9.

It is undisputed that Gussi SA does not reside in the district where the award was made—*i.e.*, the Central District of California—and that Voltage did not attempt to serve Gussi SA by a U.S. marshal.  Because of these undisputed facts, Gussi SA contends that service of Voltage's notice of motion was insufficient pursuant to § 9.  Voltage, on the other hand, argues that later amendments to the Federal Rules of Civil Procedure implicitly repealed § 9's marshal requirement, and even if the requirement is still valid, it cannot apply to service on Gussi SA because Gussi SA insisted it could not be served within the United States and service by a U.S. marshal outside of the United States is impossible.

These arguments present several questions of first impression for us, including (1) whether later amendments to the Federal Rules of Civil Procedure implicitly repealed the marshal requirement in § 9's nonresident service provision, and (2) whether that nonresident provision may apply to adverse parties who insist that they are not available for service within the United States. To resolve these questions, we must examine the statutory text of the FAA and the Federal Rules of Civil Procedure, as well as later amendments to both.

### A. When Congress Enacted § 9 of the FAA, Service by a U.S. Marshal Was the Prevailing "Manner of Other Process of the Court."

"The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The Supreme Court has stated that "it [is] beyond dispute that the FAA was designed to promote arbitration." *Id.* at 345. The Ninth Circuit has "gone [even] further, stating that 'the FAA's purpose is to give preference (instead of mere equality) to arbitration provisions.'" *Chamber of Com. of the United States of Am. v. Bonta*, 62 F.4th 473, 483 (9th Cir. 2023) (quoting *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013)). However, the Supreme Court has tempered "the FAA's 'policy favoring arbitration'" by clarifying that it "does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022).

The FAA's provisions governing applications to confirm arbitral awards manifest Congress' intent to promote arbitration. One provision is § 6, which provides that "[a]ny application to the court hereunder shall be made and heard

in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." 9 U.S.C. § 6.  Section 9 similarly provides, in relevant part, that:

> If the adverse party is a resident of the district within which the [arbitral] award was made, such service [of the application to confirm the award] shall be made upon the adverse party or his attorney *as prescribed by law for service of notice of motion* in an action in the same court.

9 U.S.C. § 9 (emphasis added).  Serving a notice of motion in an already commenced action is less cumbersome than serving process to initiate a new action, which generally requires the service of summons and a pleading, most commonly a complaint.  Accordingly, these two provisions conform with Congress' stated desire to promote arbitration, as they make the adjudication of a confirmation application more efficient.

However, Congress provided a different rule for serving confirmation applications on adverse parties that do not reside in the district where the award was made:

> If the adverse party shall be a nonresident [of the district within which the arbitral award was made], then the notice of the application [to confirm the arbitral award] shall be served *by the marshal* of any district within which

> the adverse party may be found *in like manner as other process of the court*.

9 U.S.C. § 9 (emphasis added).  In 1925, when Congress enacted the FAA, service of process—including service of summons and a complaint—was routinely enacted by the U.S. marshal.  *See Changes in Federal Summons Service Under Amended Rule 4 of the Federal Rules of Civil Procedure*, 96 F.R.D. 81, 94 (1983) ("[P]rior to 1980, the marshal was the stated summons server unless there was a person 'specially appointed' by the court to make service.").  Accordingly, in 1925, this additional provision in § 9 required prevailing parties to serve a confirmation application according to the normal rules governing service of other process of the court if the adverse party did not reside in the district within which the arbitral award was made.

## B. Later Amendments to the Federal Rules of Civil Procedure Did Not Implicitly Repeal § 9's Marshal Requirement.

In 1983, Congress amended Rule 4 of the Federal Rules of Civil Procedure, newly providing for service of summons by any nonparty over the age of eighteen.  *See Changes in Federal Summons Service*, 96 F.R.D. at 88, 94.  The "ostensibly principal purpose" of this change was to "tak[e] the marshals out of summons service almost entirely." *Id.* at 94.  However, "[p]rocess other than a summons (or subpoena . . .) continue[d] to be servable only by a marshal or person specially appointed by the court." *Id.*

Numerous courts, including lower courts in our circuit, have relied on the 1983 amendment regarding the service of summons to conclude that the marshal requirement in § 9's

nonresident service provision is an anachronism under the current Federal Rules. *See, e.g.*, *In re Arbitration Between InterCarbon Berm., Ltd. & Caltex Trading & Transp. Corp.*, 146 F.R.D. 64, 67 n.3 (S.D.N.Y. 1993) (stating that identical service language in 9 U.S.C. § 12 "is an anachronism"); *Hancor, Inc. v. R & R Eng'g Prod., Inc.*, 381 F. Supp. 2d 12, 15 (D.P.R. 2005) (noting that "[s]ome courts have questioned the continued validity of § 9's service requirement"); *Technologists, Inc. v. MIR's Ltd.*, 725 F. Supp. 2d 120, 126 (D.D.C. 2010) (observing that the FAA's marshal requirement "is an artifact of the era in which United States marshals were the default servers of process in federal courts"); *LG Elecs. MobileComm U.S.A., Inc. v. Reliance Commc'ns, LLC*, 2018 WL 2059559, at *2 (S.D. Cal. May 3, 2018) (collecting cases).

Some of those courts have even gone as far to suggest that the 1983 amendment implicitly repealed the marshal requirement in § 9's nonresident service provision and is thus no longer valid. *See, e.g.*, *Hancor*, 381 F. Supp. 2d at 15–16 (jettisoning the marshal requirement because of the "later amendments to the Federal Rules"); *Technologists*, 725 F. Supp. 2d at 127 (concluding that the FAA's marshal requirement has been displaced by contemporary Rule 4); *LG Elecs.*, 2018 WL 2059559, at *3 (ruling that "service under Rule 4 satisfies [§] 9's notice requirement"); *see also, e.g.*, *Elevation Franchise Ventures, LLC v. Rosario*, 2013 WL 5962984, at *3 n.1 (E.D. Va. Nov. 6, 2013) (declining to apply § "9's requirement of service by U.S. Marshal" because some courts have found that it "need not be followed"); *Dobco, Inc. v. Mery Gates, Inc.*, 2006 WL 2056799, at *2 (D.N.J. July 21, 2006) (implicitly ruling service by marshal pursuant to § 9 is no longer a requirement and is instead an "alternative" to Rule 4).

Those courts erred. First, while it is true that the "principal purpose" of the 1983 amendment was to "tak[e] the marshals out of summons service almost entirely," "[p]rocess other than a summons (or subpoena . . .) continue[d] to be servable only by a marshal or person specially appointed by the court." *Changes in Federal Summons Service*, 96 F.R.D. at 94. That remains true today. *See* Fed. R. Civ. P. 4.1; *see, e.g.*, *Hilao v. Est. of Marcos*, 95 F.3d 848, 853 (9th Cir. 1996) (applying Rule 4.1's marshal requirement to a class of plaintiffs' service of a notice of levy against a defendant's deposit account). Therefore, at the very least, § 9's requirement that "the notice of [an] application [to confirm an arbitral award] shall be served by the marshal . . . in like manner as other process of the court" is not wholly anachronistic as some courts have suggested. Rather, the marshal requirement mirrors contemporary Rule 4.1, which provides that "[p]rocess—other than a summons under Rule 4 or a subpoena under Rule 45—must be served by a United States marshal or deputy marshal or by a person specially appointed for that purpose." Fed. R. Civ. P. 4.1(a).

Second, even assuming arguendo that the phrase "in like manner as other process of the court" in § 9's nonresident service provision necessarily refers to the method for serving summons pursuant to Rule 4, *see, e.g.*, *Reed & Martin, Inc. v. Westinghouse Elec. Corp.*, 439 F.2d 1268, 1277 (2d Cir. 1971) (holding that that the phrase "in like manner as other process of the court" refers to Rule 4 governing service of summons), that assumption would still fail to do away with the marshal requirement. The plain text of the statute clearly states that "the notice of the application shall be served by the marshal . . . ." 9 U.S.C. § 9. Congress' use of the term "shall" indicates that service by a U.S. marshal is mandatory. *See Firebaugh Canal Co. v. United States*, 203 F.3d 568, 573

(9th Cir. 2000). To jettison the marshal requirement in its entirety because of the latter phrase "in like manner as other process of the court," 9 U.S.C. § 9, would "violate an important rule of statutory construction—that every word and clause in a statute be given effect." *United States v. Zhou*, 678 F.3d 1110, 1113 (9th Cir. 2012) (internal quotation marks removed). We can give meaning to both the marshal requirement and the phrase "in like manner as other process of the court" by reading the marshal requirement as governing *who* can complete service and the latter phrase as governing the method the marshal may employ to complete it.

Section 9's marshal requirement does not expressly contradict or irreconcilably conflict with the current Federal Rules, which still allow for service by a U.S. marshal if the court so orders, and still mandates service by a U.S. marshal where Rule 4.1 applies. *Accord Logan & Kanawha Coal Co., LLC v. Detherage Coal Sales, LLC*, 789 F. Supp. 2d 716, 720–22 (S.D.W. Va. 2011) (holding that Rule 4 did not implicitly repeal § 9's marshal requirement and listing several contemporary instances where courts can still order marshal service). Accordingly, we hold that later amendments to the Federal Rules of Civil Procedure did not implicitly repeal the marshal requirement in § 9's nonresident service provision and that it is still valid where it applies.[3]

---

[3] We avoided answering this question more than a decade ago. *See Kirby Morgan Dive Sys., Inc. v. Hydrospace, Ltd.*, 478 Fed. App'x 382, 383 (9th Cir. 2012) (declining to "address whether . . . service of [a] petition for confirmation . . . complied with . . . § 9"). But district courts within our circuit have continued to struggle with it. *See, e.g.*, *LG Elecs.*, 2018 WL 2059559, at *3.

**C. Section 9's Nonresident Service Provision Does Not Provide a Viable Method of Service on Adverse Parties Who Are Not Available for Service in the United States.**

Despite lower court disagreement over whether § 9's marshal requirement has survived into the present day, there is an emerging consensus among district courts that § 9's nonresident service provision does not apply to adverse parties located outside the United States because service by a U.S. marshal outside of the territorial United States is impossible. *See, e.g.*, *InterCarbon*, 146 F.R.D. at 67 ("The problem [with the marshal requirement] is that foreign parties will not necessarily be found in *any* district. Requiring parties to satisfy [it] might amount to requiring them to do the impossible."); *Technologists, Inc. v. MIR's Ltd.*, 725 F. Supp. 2d at 126 (observing the same); *PTA-FLA, Inc. v. ZTE USA, Inc.*, 2015 WL 12819186, at *7 (M.D. Fla. Aug. 5, 2015) (noting that § 9's nonresident service provision "arguably does not include any method for service on foreign parties at all since [such parties] will not necessarily be found in *any* district" (internal citations and quotation marks omitted)), *aff'd*, 844 F.3d 1299 (11th Cir. 2016).

This emerging consensus among lower courts is well-founded. By ratifying the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the New York Convention) and enacting Chapter 2 of the FAA, Congress clearly intended for international arbitral awards to be confirmable in the courts of the United States. *See Jones Day v. Orrick, Herrington & Sutcliffe, LLP*, 42 F.4th 1131, 1133 (9th Cir. 2022). However, § 9's nonresident service provision requires service of a notice of application to confirm an arbitral award to be made by the

marshal of the district within which the adverse party may be found.  *See* U.S.C. § 9.  This requirement, in effect, requires prevailing parties to do the impossible when a nonresident adverse party cannot be found for service of process in any judicial district of the United States.  In that circumstance, requiring service by the marshal of the district within which the adverse party may be found would disallow a federal court from ever exercising personal jurisdiction over an adverse party and prevent it from confirming an arbitral award governed by the New York Convention.  That result would necessarily conflict with 9 U.S.C. § 207, which requires a federal court to confirm an award governed by the Convention "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207.  Applying § 9's nonresident service provision to adverse parties located outside of the United States would also be repugnant to the entire purpose of Chapter 2, which Congress "enacted . . . to provide for the effective and efficient resolution of international arbitral disputes after the United States entered into the [New York] Convention . . . ."  *Jones Day*, 42 F.4th at 1133.

How do we resolve this irreconcilable conflict?  Section 208 of Chapter 2 instructs that Chapter 2 only incorporates § 9 "to the extent that [§ 9] is not in conflict with [Chapter 2] or the Convention as ratified by the United States."  9 U.S.C. § 208.  Therefore, we conclude that Congress did not intend to incorporate § 9's nonresident service provision into Chapter 2 of the FAA in circumstances where nonresident adverse parties cannot be found for service within the United States.  Accordingly, we hold that § 9's nonresident service provision does not apply to the service of notice of an application to confirm a foreign arbitral award governed by

the New York Convention if the adverse party is not available for service in any judicial district of the United States at the time of service.

### D. Section 6 of the FAA and Federal Rule of Civil Procedure 5(b) Fill the Gap Left by § 9, Not Rule 4.

When § 9 does not apply, what stands in its place? Many courts, including the Second Circuit, have concluded that Rule 4 necessarily fills the gap. *See, e.g.*, *InterCarbon*, 146 F.R.D. at 67 (ruling that Rule 4, and not Rule 5, is "the proper fallback provision" where the FAA provides "no method of service for foreign parties not resident in any district of the United States"); *Technologists, Inc. v. MIR's Ltd.*, 725 F. Supp. 2d at 127 (same); *Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 812 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 786 (2023) (noting that "[i]t is well established" in the Second Circuit that "Rule 4 sets forth the basic procedures for serving process in connection with arbitral awards").

However, those courts discount § 6 of the FAA, which states that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." 9 U.S.C. § 6. Those courts also ignore other applicable language from § 9, which requires only that "[n]otice of [an] application" to confirm an arbitral award "be served upon the adverse party" before "the court shall have jurisdiction of such party as though he had appeared generally in the proceeding." 9 U.S.C. § 9. A prevailing party need not serve an adverse party with summons for the forum court to exercise personal jurisdiction over the

adverse party.  All that needs to be served is "[n]otice of the application . . . ."  *Id.*

Because § 9's nonresident service provision does not provide a viable method of service of notice on adverse parties who are not available for service within the United States, we must rely on § 6's statutory mandate that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions . . . ."  9 U.S.C. § 6.  That language plainly refers to the reigning rules governing service of written motions and notices in federal court, which today is found in Rule 5. *See* Fed. R. Civ. P. 5(a)(1)(D), (E).  Accordingly, we hold that Rule 5(b)—the federal procedural law governing how service of a motion is made, Fed. R. Civ. P. 5(b)—is the default rule for serving notice of an application to confirm an award when § 9 conflicts with Chapter 2.

Gussi SA's reliance on *Technologists*, 725 F. Supp. 2d, and other district court cases finding that Rule 4 governs service of such applications is unavailing.  In *Technologists*, the District Court for the District of Columbia rejected the view that Rule 5 governs the service of notice of applications to vacate[4] arbitral awards on adverse parties unavailable for service within the United States because if Rule 5 governed, "foreign parties could be served by mail, whereas domestic parties who reside in another judicial district would" benefit from the heightened protections of §§ 9 and 12's nonresident service provisions[5] "which generally do[] not permit service

---

[4] 9 U.S.C. § 12 governs service of notice of an application to vacate, correct, or modify an arbitral award and contains identical provisions regarding service on resident and nonresident adverse parties.

[5] The *Technologists* court also concluded that Rule 4 displaced the marshal requirement in § 12's nonresident service provision, such that

by mail[].” *Id.* at 127. The court stated that such an outcome “is not a logical reading of the FAA’s service provisions” and held that Rule 4 governs service of notice on a foreign adverse party. *Id.*

The court did so despite the plain language of § 6, which instructs that “[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions . . . .” 9 U.S.C. § 6. To justify its approach, the court asserted that § 6 “merely ensures that motions to vacate or confirm arbitral awards are not subject to the pleading requirements of the Federal Rules of Civil Procedure and enables judges to decide arbitration issues on an expedited basis,” and has nothing to do with how notice of such motions are served. *Technologists*, 725 F. Supp. 2d at 127. But the court’s narrowing construction does not withstand scrutiny. By referring to the “law for the making . . . of motions” in § 6, Congress clearly invoked the procedural law governing the making of motions in federal court. It is axiomatic that making a motion in federal court requires giving notice to the nonmovant. To facilitate such notice, the moving party must generally serve it on the other parties to the litigation in accordance with Rule 5. *See* Fed. R. Civ. P. 5(a)(1). Pursuant to the plain language of the FAA, that default rule applies unless the FAA “provides otherwise.” 9 U.S.C. § 6.

A court’s discomfort, as a matter of policy, that the default rule under the FAA allows for service of notice of applications to confirm an arbitral award pursuant to the “law for the making . . . of motions” does not authorize that court to narrow the commands of the FAA to the effect of

---

§ 12’s nonresident service provision mandates the application of Rule 4. *See* 725 F. Supp. 2d at 127.

ignoring them.   As the Supreme Court has instructed, "[e]ven the most formidable policy arguments cannot overcome a clear statutory directive[]" in the FAA. *Badgerow,* 596 U.S. at 16.  As a court, we "have no warrant to redline the FAA," *id.* at 11, importing Rule 4's procedural protections, which generally apply to the service of summons into § 9 of the FAA, which does not require the service of summons, *cf. id.* (criticizing lower courts for "importing . . . consequential language" from § 4 of the FAA "into [other] provisions containing nothing like it").[6] Accordingly, we reject Gussi SA's argument that Rule 4 is the proper fallback provision where § 9's nonresident service provision does not apply.

### E. Gussi SA Insisted It Was Not Available for Service in the United States.  Voltage Could Therefore Effect Service by Mailing its Motion Papers to Gussi SA's Attorney Pursuant to Rule 5(b).

In its first motion to quash service of the confirmation application, Gussi SA insisted that it had to be served in compliance with Federal Rule of Civil Procedure 4(f) because it is "a non-resident and foreign adversary" not available "for service . . . at any location . . . within a judicial

---

[6] Even if we could privilege policy-based arguments in construing the FAA, we would still reject importing the protections of Rule 4 into the FAA.   "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."   *Concepcion*, 563 U.S. at 344. Importing Rule 4 into the FAA as the default rule for serving notice of applications to confirm arbitral awards does not streamline the confirmation of them.  Doing so hinders their confirmation, as is evident through Gussi SA's litigation conduct after it lost an arbitration that it fully participated in.

district of the United States." In its second motion to quash service, Gussi SA maintained that it could not be served in the United States and further represented to the district court that it is not registered to do business in California, thereby relieving it of the obligation under California law to have a registered agent for service of process in the state. *See* Cal. Corp. Code § 2105(a)(6). Gussi SA's past representations about its inability to be served in the United States alone are sufficient for us to conclude that Gussi SA could not be found for service of process in the United States, and thus § 9's nonresident service provision does not apply.

Accordingly, Voltage only needed to serve the motion "in the manner provided by the law for the making . . . of motions," 9 U.S.C. § 6, which in federal district court is Rule 5. Rule 5 provides that "[i]f a party is represented by an attorney, service under this rule must be made on the attorney . . . ." Fed. R. Civ. P. 5(b)(1). It further provides that "[a] paper is served under this rule by . . . mailing it to the person's last known address—in which event service is complete upon mailing." Fed. R. Civ. P. 5(b)(2), (C). In this case, it is undisputed that Voltage mailed its motion papers to the attorneys who represented Gussi SA in the underlying arbitration shortly before filing the motion in federal court. Accordingly, the application to confirm the award was sufficiently served in accordance with § 6 and Rule 5. Service of notice was thus sufficient under federal law, and the district court "ha[d] jurisdiction [over Gussi SA] as though [it] had appeared generally in the proceeding." 9 U.S.C. § 9. The district court was thus empowered to enter judgment against Gussi SA in confirming the award.[7]

---

[7] Gussi SA's argument that Voltage's service of notice violates the Inter-American Convention on Letters Rogatory is without merit. That

## IV. The District Court Did Not Abuse Its Discretion When It Declined to Extend Comity to a Purported Mexican Court Order.

On appeal, Gussi SA also challenges the district court's decision not to take judicial notice of a document that Gussi SA claimed was a court order from Mexico enjoining Voltage from seeking to confirm the award in the United States. However, as the district court correctly noted, Gussi SA did not certify the genuineness of the document purporting to be a Mexican court order or the accompanying translation.

In its opening brief on appeal, Gussi SA fails to challenge either of those reasons stated by the district court for refusing to notice the order. Gussi SA only argues in general that the district court erroneously interpreted Federal Rule of Evidence 201 and fails to make any mention of the procedural and evidentiary rules upon which the district court relied, such as Federal Rule of Civil Procedure 44(a)(2)(A)(ii) or Federal Rules of Evidence 604 and 902(3). Therefore, Gussi SA fails to carry its heavy burden to show that the district court abused its discretion when it decided not to take judicial notice of the purported court order from Mexico. There was no judicially noticeable court order to which the district court could have extended comity.

---

convention only regulates the transmittal of judicial documents abroad. *See* 28 U.S.C. § 1781. Voltage's motion papers were not issued by a court and were not transmitted abroad when they were mailed to Gussi SA's attorneys, who received the papers in the United States. Gussi SA's related argument that such service is inconsistent with the Hague Convention is immaterial, because on the same page in its opening brief, Gussi SA plainly acknowledges that in signing the DLA, it waived application of the Hague Convention.

Accordingly, we affirm the district court's denial of Gussi SA's request to stay or dismiss the case. Because Gussi SA's failure to certify the genuineness of the court order and its accompanying translation is sufficient to affirm the district court's denial, we need not reach the substantive question of international comity raised by Gussi SA on appeal.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment confirming the arbitral award in favor of Voltage. Gussi SA shall bear Voltage's costs on appeal. *See* Fed. R. App. P. 39(a)(2).