**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN DOE; ROBERT ROE,

*Plaintiffs - Appellants*,

v.

DEUTSCHE LUFTHANSA
AKTIENGESELLSCHAFT;
LUFTHANSA GROUP BUSINESS
SERVICES NEW YORK LLC,

*Defendants - Appellees*.

No. 24-2829

D.C. No.
3:23-cv-04413-SI

OPINION

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted May 12, 2025
San Francisco, California

Filed October 30, 2025

Before: Sidney R. Thomas, William A. Fletcher, and Milan
D. Smith, Jr., Circuit Judges.

Opinion by Judge Sidney R. Thomas
Partial Concurrence and Partial Dissent by Judge M. Smith

# SUMMARY[*]

## Personal Jurisdiction / Diversity Jurisdiction

The panel reversed the district court's order dismissing for lack of subject matter jurisdiction an action brought by John Doe and Robert Roe against Deutsche Lufthansa Aktiengesellschaft ("Lufthansa") and Lufthansa Group Business Services New York LLC ("LGBS"), a Lufthansa subsidiary that provides IT support to Lufthansa.

Doe and Roe, a married same-sex couple who spent at least part of each year living together in Saudi Arabia, where homosexuality is a capital offense, booked tickets through Lufthansa to travel from Saudi Arabia to San Francisco. They alleged a breach of contract claim based on Lufthansa's contract for carrying Doe and Roe to California, which included a privacy policy; and several tort claims based on the disclosure of their marital status.

Lufthansa is based in Germany, but regularly operates flights in and out of California, has offices at two California airports, has dozens of employees in California, and has an agent for service of process in California. LGBS's sole member is a corporation, whose principal place of business is in Oklahoma and whose state of incorporation is Delaware.

Applying the three-prong minimum contacts test, the panel held that there is specific personal jurisdiction over Lufthansa and LGBS in California.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The first prong was satisfied because Lufthansa purposefully availed itself of the privilege of doing business in California. Lufthansa contracted to carry Doe and Roe into California, and the contract required performance in California, the forum state. The purposeful direction test was also satisfied because Lufthansa's conduct extended into California.

The second prong was satisfied because Lufthansa's forum-related activities arose out of and related to the claims in this case. Both the breach of contract claim and the tort claims arose out of and related to the defendants' California activities. Lufthansa signed a contract for carriage into California, and allegedly breached that contract by disclosing information the contract guaranteed would be private. The contract for carriage is a but-for cause of the tort claims.

The third prong—the reasonableness of exercising jurisdiction—was satisfied. Weighing the seven factors used to analyze the reasonableness of asserting personal jurisdiction, the panel held that those factors do not add up to a compelling case that jurisdiction would be unreasonable.

The panel also held that the district court had subject matter jurisdiction over this case because there is diversity jurisdiction. Accordingly, the panel reversed the district court's dismissal and remanded for further proceedings.

Concurring in part and dissenting in part, Judge M. Smith agreed with the majority's recitation of the facts and procedural history, and that there is subject matter jurisdiction. He therefore joined Parts I and III of the majority opinion. He dissented because specific personal jurisdiction is not appropriate here. Even if Plaintiffs have

satisfied the first of the personal jurisdiction analysis, steps two and three are not satisfied because Plaintiffs have not shown that their claims arise out of or relate to Lufthansa's forum-related conduct where all the relevant activity occurred abroad, and the exercise of specific personal jurisdiction is unreasonable.

## COUNSEL

Donald J. Putterman (argued) and Dannielle M. Campbell, Putterman Yu Wang LLP, San Francisco, California, for Plaintiffs-Appellants.

Ivy L. Nowinski (argued), Scott D. Cunningham, and Anthony U. Battista, Condon & Forsyth LLP, Los Angeles, California, for Defendants-Appellees.

## OPINION

S.R. THOMAS, Circuit Judge:

This appeal returns to us after a limited remand to the district court. We previously determined that we lacked subject matter jurisdiction because the requisite diversity of citizenship had not been alleged. We issued a limited remand to the district court for it to consider whether to allow an amendment to the removal notice pursuant to 28 U.S.C. § 1653. The district court granted the amendment. Therefore, we consider the merits of the appeal anew.

Plaintiffs John Doe and Robert Roe appeal from the dismissal of their case for lack of personal jurisdiction. We have appellate jurisdiction under 28 U.S.C. § 1291. We review the district court's determination that it does not have personal jurisdiction de novo. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). We hold that the defendants are subject to specific personal jurisdiction in California. We also hold that, with the amended removal notice, we have subject matter jurisdiction over this case. We reverse and remand.

I

A

We recite the facts as they are alleged in the complaint. Plaintiffs John Doe and Robert Roe are a same-sex couple. They have been in a committed relationship for over thirty years. They were legally married in California in 2013. Since 1989, they have spent at least part of each year living together in Saudi Arabia. Because homosexuality is a capital offense in Saudi Arabia, they have kept their relationship and sexual orientation hidden this entire time.

Doe is a United States citizen who lives in California and spends much of the year working in Saudi Arabia. Roe is a Saudi Arabian citizen; prior to the events underlying this lawsuit, he lived in Saudi Arabia and frequently traveled to California.

Soon after the COVID-19 pandemic started, the United States stopped allowing non-citizen travelers from Saudi Arabia into the United States. In May 2021, the United States re-opened its borders to non-citizens from Saudi Arabia, but only if they were immediate family members of United States citizens. Doe and Roe, who had been stuck in Saudi Arabia for over a year wanted to return to California, so they booked round-trip tickets to fly to San Francisco, California.

Doe and Roe booked through defendant Deutsche Lufthansa Aktiengesellschaft ("Lufthansa"). Lufthansa is based in Germany, but regularly operates flights in and out of California. Lufthansa has offices at two California airports, Los Angeles ("LAX") and San Francisco ("SFO"); has dozens of employees in California; and has an agent for service of process in California.

Doe and Roe chose Lufthansa over alternative airlines based in the Middle East because they expected that Lufthansa would be discreet in handling the confirmation of their marital status for purposes of United States entry requirements. Lufthansa did not live up to that expectation. On May 25, 2021, when Doe and Roe arrived at the Riyadh airport to check in, the Lufthansa check-in agent requested that Roe identify his familial relationship with a United States citizen. Roe asked to speak with the most senior Lufthansa official, Deputy Station Chief Iqbal Jamshed. Roe then explained to Jamshed, while out of earshot of anyone

else, that he and Doe were married.  Jamshed became loud and hostile.  He declared, loudly enough for others in the check-in area to hear, that he could not believe Doe and Roe were married.  Doe then approached and showed Jamshed their marriage certificate, but Jamshed continued to publicly demean and question Doe and Roe about their relationship.

Jamshed took Doe to Lufthansa's primary office in the airport terminal to send copies of Doe and Roe's passports and marriage certificate to Lufthansa's headquarters.  Doe said that he worried the Saudi government might intercept these electronic communications, but the Lufthansa employees ignored this concern.  Doe asked Jamshed to call Lufthansa's Riyadh station chief, but the station chief refused to speak with Doe.

Just before the flight departed, Doe and Roe were allowed to board.  They had a layover in Frankfurt.  On their first flight, they explained what had happened to a Lufthansa employee and the captain on board.  The employee and captain assured them that their information would be deleted from Lufthansa's computers, and that a Lufthansa agent would meet them in Frankfurt.  No Lufthansa agent met them.

On their second flight, from Frankfurt to San Francisco, they again explained what had happened to a Lufthansa employee on board.  The employee assured them that their information had been deleted.  The captain asked for a Lufthansa agent to meet Doe and Roe at the San Francisco airport, so they could lodge a complaint.  This time, a Lufthansa agent did meet them, and assured them that an agent based in New York would call them within the hour.  They never received such a call.

About a month later, Doe discovered that the marital status on his Saudi government profile was changed from "single" to "married." Doe and Roe allege that "there is no conceivable way the Saudi Arabian government could have learned about Plaintiffs' marriage other than as a result of" this incident.

Roe believes that the Saudi government also knows about his marital status and sexual orientation. He has not returned to Saudi Arabia since this flight, for fear of harsh penalties for being homosexual, including the revocation of his passport, imprisonment, and even execution. Instead, he has remained in the United States—through a visa and then a green card—since arriving in California. He has not seen his family, who all live in Saudi Arabia and who do not know about his sexuality, since the flight. Among other financial losses, Roe had to quickly sell real estate he manages in Saudi Arabia, incurring a loss of around $300,000. He has also developed pulmonary fibrosis, a terminal illness, which appears to be a result of the stress from the incident.

## B

Doe and Roe sued Lufthansa and Lufthansa Group Business Services New York LLC ("LGBS"), a Lufthansa subsidiary that provides IT services to Lufthansa, in California state court. They alleged a breach of contract claim and several tort claims: public disclosure of private facts, intentional infliction of emotional distress, negligent infliction of emotional distress, and loss of consortium. The breach of contract claim was based on Lufthansa's contract for carrying Doe and Roe to California, which included a privacy policy that promises customers' information, if transmitted, will be transmitted securely to the intended

recipient. Each of the tort claims was based on the disclosure of Doe and Roe's marital status.

Lufthansa and LGBS removed to federal district court, asserting both diversity jurisdiction and federal question jurisdiction. Neither the district court, nor either of the parties below, discussed subject matter jurisdiction after the removal notice. The district court ultimately dismissed the case for lack of personal jurisdiction. Doe and Roe appealed.

We requested supplemental briefing on subject matter jurisdiction. Lufthansa and LGBS submitted a supplemental brief and then a motion to supplement the record, which both indicated that LGBS had different membership than Lufthansa claimed in the removal notice. At that point, the record contained conflicting information about who LGBS's sole member is, which is important for determining LGBS's citizenship for the purposes of diversity jurisdiction. *Voltage Pictures, LLC v. Gussi, S.A. de C.V.*, 92 F.4th 815, 822 (9th Cir. 2024) ("A limited liability company is a citizen of every state of which its owners/members are citizens, not the state in which it was formed or does business." (quoting *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 612 (9th Cir. 2016))), *cert. denied*, 145 S. Ct. 158 (2024). Thus, as we have noted, we issued a limited remand to the district court, to resolve that question of fact.

On remand, Lufthansa and LGBS moved to amend the removal notice, pursuant to 28 U.S.C. § 1653, to change the citizenship of LGBS's sole member. The district court granted that request. Accordingly, for purposes of this case, LGBS's sole member is a corporation, whose principal place of business is in Oklahoma and whose state of incorporation is Delaware.

II

We conclude that there is specific personal jurisdiction over Lufthansa and LGBS in California. "In exercising personal jurisdiction, a federal district court is constrained by the Fourteenth Amendment's Due Process Clause and the long-arm statute of the state in which it sits." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 2561 (2024). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800–01; Cal. Civ. Proc. Code § 410.10. "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger*, 374 F.3d at 800.

"Personal jurisdiction can be either general or specific. A court may exercise general jurisdiction 'only when a defendant is "essentially at home" in the State.'" *Impossible Foods*, 80 F.4th at 1086 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)). Doe and Roe do not assert that Lufthansa or LGBS are "essentially at home" in California, so this form of personal jurisdiction does not apply.

"Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford*, 592 U.S. at 359. To determine if there is specific personal jurisdiction over a

claim against a non-resident defendant, we use the three-prong "minimum contacts" test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  We conclude all three prongs are satisfied here.

## A

The first prong of the minimum contacts test is satisfied because Lufthansa purposefully availed itself of the privilege of doing business in California.  "We often use the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction . . . but availment and direction are, in fact, two distinct concepts."  *Id.*  The purposeful availment test is satisfied "where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of

the forum," because then the defendant "manifestly has availed himself of the privilege of conducting business" in the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (citations omitted). "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802.

In contrast, "the purposeful direction test requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025) (en banc) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)).

If either the purposeful availment or purposeful direction test is met, or some combination thereof, the first prong is satisfied. The rule for the first prong uses the disjunctive: "The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; *or* perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum." *Schwarzenegger*, 374 F.3d at 802 (quoting *Lake*, 817 F.2d at 1421); *see also Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (the first prong "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; *or* by some combination thereof" (emphasis added)).

While some of our cases have said that purposeful availment is better suited for contract cases, and purposeful

direction for tort cases, *see, e.g.*, *Schwarzenegger*, 374 F.3d at 802, this is not a rigid rule. *Impossible Foods*, 80 F.4th at 1088–89. Rather, "[a]lthough the distinction between purposeful availment and direction is often a useful and appropriate doctrinal table-setting device, 'there's no need to adhere to [this] iron-clad doctrinal dichotomy' in every case." *Id.* at 1089 (quoting *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023)). "At the end of the day, the purposeful direction and availment tests simply frame our inquiry into the defendant's 'purposefulness' vis-à-vis the forum state, ensuring that defendants are not 'haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.'" *Id.* (quoting *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020)); *see also Davis*, 71 F.4th at 1162. Thus, the first prong is not to be defeated when, according to this guideline, the tort claim is using a combination of both tests.

Here, the purposeful availment test is satisfied because Lufthansa contracted to carry Doe and Roe into California. That contract requires performance in California, the forum state, and thus satisfies the purposeful availment test. *Schwarzenegger*, 374 F.3d at 802. Moreover, Lufthansa "manifestly has availed [itself] of the privilege of conducting business" in California, because Lufthansa regularly operates flights in and out of California, has offices at LAX and SFO, has dozens of employees in California, and has an agent for service of process in California. *Burger King*, 471 U.S. at 476.

The purposeful direction test is also satisfied in this case because Lufthansa's conduct extended into California. Although the tortious conduct primarily occurred in Saudi Arabia, we "evaluate all of a defendant's contacts with the

forum state, whether or not those contacts involve wrongful activity by the defendant." *See Yahoo!*, 433 F.3d at 1207; *see also Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.") And even so, Doe alleges additional injury from the lack of mitigation, which occurred both on the flight to San Francisco and at SFO. The purposeful direction test is therefore also satisfied as this is not the case where Lufthansa had only "random, fortuitous, or attenuated contacts" with the forum. *See Impossible Foods*, 80 F.4th at 1089.

Because the purposeful availment test and purposeful direction test are satisfied, the first prong of the minimum contacts test is satisfied here.

## B

The second prong of the minimum contacts test is also satisfied, because Lufthansa's forum-related activities arise out of and relate to the claims in this case. The "arises out of" test requires the defendant's contacts with the forum to be a but-for cause of the plaintiff's claims. *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506 (9th Cir. 2023); *see also Ford*, 592 U.S. at 362.

The "relates to" test only requires a "'connection' between a plaintiff's suit and a defendant's activities." *Ford*, 592 U.S. at 361 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 264 (2017)). For example, in *Ford*, the Supreme Court held that Montana and Minnesota had specific personal jurisdiction over Ford in plaintiffs' products liability suit because Ford had extensively advertised cars in those states and residents

of those states had bought Ford's cars and then suffered injury in those states. *Ford*, 592 U.S. at 364–66. Ford argued that it was not subject to personal jurisdiction because it sold the specific cars involved in the crashes outside the forum states; the Supreme Court reasoned that this fact might defeat the "arises out of" test, but not the "relates to" test. *Id.* at 366–67. The plaintiffs' claims were still sufficiently connected to Ford's advertisements in the forum states to satisfy the "relates to" test. *See id.*

The Supreme Court distinguished *Ford* from *Bristol-Myers*, a products liability case where the "relates to" test was not satisfied. *Id.* at 369–70 (citing *Bristol-Myers*, 582 U.S. 255). In *Bristol-Myers*, the defendant drug manufacturer had engaged in some contact with the forum state, but had not manufactured the allegedly defective drug there, and the plaintiffs had not bought or suffered injury from the drug there. 582 U.S. at 258–59. Thus, "the forum State, and the defendant's activities there, lacked any connection to the plaintiff's claims," so the "relates to" test was not met. *Ford*, 592 U.S. at 369–70.

The breach of contract claim both arises out of and relates to Lufthansa's California-related activities. Lufthansa signed a contract for carriage into California, and allegedly breached that contract by disclosing information the contract guaranteed would be private. The contract for carriage into California is a forum-related activity; the breach of that contract certainly arises out of and relates to the contract, and thus satisfies the second prong. *See Burger King*, 471 U.S. at 478–79 (holding there was specific jurisdiction over an out-of-state defendant when the "dispute grew directly out of 'a contract which had a *substantial* connection with'" the forum state (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957))).

The tort claims also arise out of and relate to the defendants' California activities. The tort claims arise out of the defendants' California activities because the contract for carriage into California is a but-for cause of the tort claims. Without the contract for carriage into California, Doe and Roe would not have needed to disclose their marital status to Lufthansa, nor needed to interact with Lufthansa at all, and so the tortious conduct would not have occurred. *See Briskin*, 135 F.4th at 760 (holding plaintiff online shopper's privacy torts arose out of defendant e-commerce platform offering service to plaintiff, because plaintiff alleged the service is what caused the alleged privacy violations).

Although the tortious conduct started in Saudi Arabia, when Jamshed publicly demeaned and outed Doe and Roe, the conduct continued into California: on the flight from Frankfurt to San Francisco, a Lufthansa agent promised Doe that the confidential information had been deleted; once in San Francisco, a Lufthansa agent promised Lufthansa would call Doe and Roe about the incident, but never did. Because the tort claims include acts and omissions that happened on the flight into California and while in California, they relate to activity in California. *See Ford*, 592 U.S. at 364–65.

In sum, the second prong is satisfied, as to both the contract and the tort claims.

C

Finally, the third prong of the minimum contacts test, the reasonableness of exercising jurisdiction, is also satisfied. If a plaintiff has successfully asserted the first two prongs of the specific personal jurisdiction test, the burden shifts to the defendant to present a "compelling case" that jurisdiction is unreasonable. *Burger King*, 471 U.S. at 477. To analyze the

reasonableness of asserting personal jurisdiction, we weigh seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018) (citing *Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065 (9th Cir. 1985)). Here, those factors do not add up to a "compelling case" that jurisdiction would be unreasonable.

The first factor, "purposeful interjection," weighs in favor of jurisdiction, because the defendants purposefully availed themselves of the privilege of doing business in California. *See Silk v. Bond*, 65 F.4th 445, 458 (9th Cir. 2023) (holding that the "purposeful interjection" factor is met when the purposeful availment prong is met).

The second factor, the burden on the defendants, is neutral. Although Lufthansa is a foreign corporation, it has an agent and office in California, and we have noted that "modern advances in communications and transportation have significantly reduced the burden of litigating in another country." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). Although Lufthansa may prefer to

litigate in Germany, it is no great burden for it to litigate in California.

The third factor, the extent of conflict with the sovereignty of the defendants' state, likely weighs against jurisdiction. We assume, without deciding, that this factor may encompass concerns about the sovereignty of any foreign nation, not just the defendant's home nation. *See Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 115 (1987) ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." (quoting *United States v. First Nat'l City Bank*, 379 U.S. 378, 404 (1965) (J. Harlan, dissenting))). If the factor encompasses only the defendant's home nation, then it would weigh in favor of jurisdiction, because defendants' home nations are Germany and the United States, neither of which have anti-gay laws like Saudi Arabia's anti-gay laws. But assuming that this factor encompasses concerns with Saudi Arabia's sovereignty, it weighs against jurisdiction: Doe and Roe's claims are predicated on harm from Saudi Arabia's anti-gay laws, and their claims would also require discovery into the Saudi government's surveillance of Lufthansa's electronic communications.

The fourth factor, the forum state's interest in adjudicating the dispute, weighs in favor of jurisdiction. "California maintains a strong interest in providing an effective means of redress for its residents tortiously injured," like Doe. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (citation omitted).

The fifth factor, the most efficient judicial resolution of the controversy, weighs slightly against jurisdiction. "This factor focuses on the location of the evidence and witnesses.

It is no longer weighed heavily given the modern advances in communication and transportation." *Panavision*, 141 F.3d at 1323. While many of the witnesses and evidence are in Saudi Arabia, this does not weigh heavily against jurisdiction, because those witnesses can either fly to California or be interviewed remotely, and discovery would in any event be largely electronic.

The sixth factor, the importance of the forum to the plaintiffs, weighs in favor of jurisdiction. The possible alternative fora, Germany and Saudi Arabia, are both abroad. Roe lives in the United States and does not have an American passport, so he would have to travel to either alternative forum on his Saudi passport, which could be taken from him at any time.

The seventh factor, the availability of an alternative forum, weighs against exercising jurisdiction. Although the defendants bear the burden of showing jurisdiction is unreasonable, Doe and Roe still "bear[] the burden of proving the unavailability of an alternative forum." *Roth v. Garcia Marquez*, 942 F.2d 617, 624 (9th Cir. 1991) (quoting *Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co.*, 828 F.2d 1439, 1445 (9th Cir. 1987)). Doe and Roe have not shown how Germany, Lufthansa's state of incorporation, is unavailable to litigate this case, so we "[c]halk this one up for" the defendants. *Id.* at 625.

In sum, three factors weigh in favor of jurisdiction (purposeful interjection, the forum state's interest, and the importance of the forum to the plaintiffs), three weigh against (conflict with the sovereignty of another state, efficient judicial resolution, and availability of an alternate forum), and one is neutral (burden on the defendants). This lineup does not add up to a "compelling case" against

jurisdiction where, as here, many of the factors that weigh against jurisdiction do so only slightly. *See Roth*, 942 F.2d at 625 (holding there was no "compelling case" that jurisdiction is unreasonable where two factors favored jurisdiction, three disfavored jurisdiction, and two were neutral).

## D

Ultimately, the personal jurisdiction analysis is rooted in concerns about defendants' due process rights. *See, e.g.*, *Bristol-Myers*, 582 U.S. at 261. Given the defendants' extensive contacts with California, and the connection of those contacts to the suit here, we cannot say that their due process rights would be violated by the exercise of personal jurisdiction. *See Ford*, 592 U.S. at 367 (holding that the defendant was subject to personal jurisdiction because "allowing jurisdiction . . . treats [the defendant] fairly").

## III

Having determined that we have appellate jurisdiction and personal jurisdiction, we must also assure ourselves of a third form of jurisdiction: subject matter jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it." (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934))).

Given the district court's allowance of an amendment to the removal notice, we conclude that there is subject matter jurisdiction because there is diversity jurisdiction. Diversity jurisdiction requires (1) an amount-in-controversy over $75,000, and (2) diversity of citizenship. *See* 28 U.S.C.

§ 1332(a).   First, the amount-in-controversy requirement is satisfied, because Doe and Roe allege damages over $300,000.  28 U.S.C. § 1332(a).

Second, the diversity of citizenship requirement is satisfied under 28 U.S.C. § 1332(a)(3).  "Section 1332(a)(3) . . . confer[s] jurisdiction over suits in which aliens are on both sides of the case, but only if there are also diverse U.S. citizens on both sides."  *Voltage Pictures*, 92 F.4th at 822. Here, there are diverse U.S. citizens on both sides of the case: plaintiff Doe is a citizen of California. Defendant LGBS, an LLC, is a citizen of Oklahoma and Delaware, because—as the district court ruled on the limited remand— its sole member is a citizen of Oklahoma and Delaware. *See id.* (holding that LLCs are citizens of every state where their members are citizens).  That there are foreign nationals on both sides of the case—Roe as a plaintiff, Lufthansa as a defendant—does not defeat diversity under Section (a)(3), because these foreign nationals are additional parties. *See* 28 U.S.C. § 1332(a)(3).

IV

In sum, we hold that Lufthansa and LGBS are subject to personal jurisdiction in California.  We also hold that federal courts have subject matter jurisdiction over this case.  We thus reverse the district court's dismissal, and remand for further proceedings.

**REVERSED AND REMANDED.**

M. SMITH, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's recitation of the facts and procedural history and that we have subject matter jurisdiction and therefore join Parts I and III of the majority opinion.  However, because I do not believe we have personal jurisdiction over the defendants, I otherwise respectfully dissent.  The majority's approach in this case has wide-reaching implications.  Now, at least in our circuit, anyone who experiences any issues with a check-in process or other airline interaction anywhere in the world can sue in the intended destination of their flight, even if there is no other connection to that destination.  This lax view of personal jurisdiction runs counter to the Supreme Court's admonition that there should be "a substantial connection with the forum State" when exercising personal jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

## I

Our caselaw is less than clear when it comes to whether Plaintiffs here must show that Defendants "purposefully directed" their activities toward California or instead "purposefully availed" themselves of the privileges of conducting business in California.  Maj. Op. 10–11.  But even if we assume that Plaintiffs have satisfied that first step of the personal jurisdiction analysis, steps two and three are not satisfied.

## II

Specific personal jurisdiction is not appropriate here, where the claim neither "arises out of" nor "relates to" California and where the exercise of jurisdiction is unreasonable.  *Schwarzenegger v. Fred Martin Motor Co.*,

374 F.3d 797, 802 (9th Cir. 2004).  "[T]here must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Here, Plaintiffs have not shown that their claims arise out of or relate to Lufthansa's forum-related conduct.  All the relevant activity occurred abroad:  Plaintiffs resided in Saudi Arabia, purchased their tickets in Saudi Arabia, and had their confrontation with Jamshed in Saudi Arabia.  In other words, all "suit-related conduct" is connected to Saudi Arabia, not California. *See Walden*, 571 U.S. at 284.  The suit-related conduct in this case was Jamshed's revelation of Plaintiffs' marital status at the airport and the subsequent transmission of their confidential information from Saudi Arabia to Germany, not the operation of a flight to San Francisco.  This conduct does not have a "substantial connection" to California except as the destination of Plaintiffs' flight.  That both the conduct and the harm occurred abroad weighs heavily against exercising jurisdiction. *See Bristol-Myers*, 582 U.S. at 265.

The Supreme Court's ruling in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021) confirms that Plaintiffs here have not shown that the conduct at issue sufficiently "relates to" California.  In that case, the Supreme Court held that personal jurisdiction was appropriate over Ford in Montana and Minnesota courts for car failures "*in one of those states*." *Id.* at 365 (emphasis added).  Because Ford had "systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those

States," the Court recognized that Ford's suit-related conduct was sufficiently "relate[d] to" the respective fora. *Id.* This was unlike *Bristol-Myers*, where the "defendant's activities" in the forum state "lacked any connection to the plaintiffs' claims." *Id.* at 369. The same holds true here.

Nor does the "arise out of" prong save Plaintiffs. We have traditionally applied a "but for" causation test to that prong. *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504 (9th Cir. 2023). At first glance, that might seem like a relatively lax test. *See Ford*, 592 U.S. at 376 (Gorsuch, J., concurring in the judgment) ("As every first year law student learns, a but-for causation test isn't the most demanding. At a high level of abstraction, one might say any event in the world would not have happened 'but for' events far and long removed."). But our cases have clarified that there must be some greater nexus "between the cause of action and the defendant's activities in the forum." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), *rev'd on other grounds by Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991); *see also id.* at 386 ("The evidence is clear that Carnival's solicitation of business *in Washington* attracted the Shutes (through their travel agent) to the Carnival cruise.") (emphasis added); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (finding the "arising out of" prong satisfied because plaintiff "would not have been injured 'but for' the defendant['s] conduct directed towards [the plaintiff] *in California*") (emphasis added).

The majority's assertions to the contrary are unavailing. As to Plaintiffs' contract claim, the majority argues that because Lufthansa "signed a contract for carriage into California," the breach of that contract sufficiently "arises out of and relates to" California. Maj. Op. 15. But the

parties formed the contract in Germany and Saudi Arabia and the alleged breach of contract occurred in Saudi Arabia, not California. The only connection between the contract and California is that it was a contract for a flight to San Francisco. That California was the destination does not impact the nature of the contract claim at all—Plaintiffs' claims would not differ if the flight were instead to New York, Miami, or Chicago. Such an attenuated connection to the forum state is insufficient under our precedent.

As to Plaintiffs' tort claims, the majority offers two arguments. First, the majority claims that because of the alleged in-flight conduct by Lufthansa employees and conduct by Lufthansa's agent on the ground in San Francisco, the tort claims sufficiently "relate to activity in California." Maj. Op. 16. But Plaintiffs' complaint only mentions their conversations with Lufthansa agents in and en route to San Francisco in discussing Plaintiffs' own "efforts to mitigate" Lufthansa's alleged disclosures of sensitive information in Saudi Arabia, not as a continuation of Lufthansa's tortious conduct. All of the relevant tortious conduct relates to Saudi Arabia and Germany, not California.

Second, the majority asserts that the contract for carriage into California is a "but-for" cause of the tort claims. Maj. Op. 16. As discussed above, though, our cases require a greater connection to conduct occurring in the forum to establish but-for causation satisfying the "arising out of" requirement. *See Shute*, 897 F.2d at 385. The majority cites our en banc decision in *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025), but that decision does not support finding jurisdiction here. In *Briskin*, the en banc court highlighted the plaintiff's "contact with" devices within the forum state, California, and the defendant "Shopify's

installation of software onto unsuspecting Californians' devices and extracting personal data from them" in concluding that the plaintiff's claims "ar[o]se out of" and "relate[d] to" Shopify's contacts with California. *Id.* at 760. In other words, but for Shopify's contacts with devices *located in California*, the plaintiff's damages would not have occurred. By contrast, no but-for conduct here occurred in California. The contract was formed and allegedly breached in Saudi Arabia. Such minimal ties to the proposed forum are insufficient for specific personal jurisdiction.

Without stronger ties between Plaintiffs' claims and California, I would find that Plaintiffs have failed to satisfy the second step of the specific personal jurisdiction analysis.

## III

Even if Plaintiffs satisfied the second step, the exercise of specific personal jurisdiction is unreasonable at step three. In determining reasonableness, we consider:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018).

Because I would assume, without holding, that Plaintiffs have satisfied the purposeful availment step of the specific personal jurisdiction analysis, I would similarly assume that the "purposeful interjection" factor favors them.  *See Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 984 (9th Cir. 2021) ("The purposeful interjection factor in the reasonableness analysis is 'analogous to the purposeful direction' factor.").

The burden on Lufthansa of defending in the forum would be minimal given modern transportation and electronic discovery, but I would nevertheless hold that this factor favors Lufthansa slightly, given that most, if not all, of its witnesses live overseas.  *See Ballard v. Savage*, 65 F.3d 1495, 1501 (9th Cir. 1995).

The sovereignty factor also favors Lufthansa, though much more strongly.  As the Supreme Court has cautioned and the majority recognizes, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co., Ltd. v. Super. Ct.*, 480 U.S. 102, 115 (1987) (quoting *United States v. First Nat'l City Bank*, 379 U.S. 378, 404 (1965) (Harlan, J., dissenting)).  Plaintiffs' claims require investigation of Saudi Arabia's purported practice of covert monitoring and marital status tracking, which would create a conflict with Saudi Arabia's sovereignty.  Additionally, as the district court pointed out, applying California privacy tort law will require the court, at least to some degree, to determine what is considered offensive or outrageous conduct in Saudi Arabia.  *See Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994) (explaining inquiry required in privacy tort cases).  Where such extensive conflicts with foreign nations' sovereignty would result, this factor strongly counsels against jurisdiction.

By contrast, the forum state's interest factor favors Plaintiffs, as the majority correctly points out.  Maj. Op. 18 (quoting *Panavision*, 141 F.3d at 1323).   But unlike in *Panavision*, the alleged harm here occurred outside of California.  This diminishes how strongly the factor weighs in favor of jurisdiction.

As with the burden of defense factor, the efficiency factor weighs slightly in favor of Lufthansa.  As we have previously explained, this factor "focuses on the location of the evidence and witnesses." *Panavision*, 141 F.3d at 1323.  Though, to be sure, "[i]t is no longer weighed heavily given the modern advances in communication and transportation." *Id.*

The importance-of-the-forum-to-plaintiffs factor weighs in Plaintiffs' favor.  As the majority correctly explains, Roe does not have an American passport, meaning he would have to travel on a Saudi Arabian passport, which could be taken from him by Saudi Arabia.  Maj. Op. 19.

Finally, the availability of an alternative forum weighs in Lufthansa's favor.  Though Lufthansa generally bears the burden at the third step of the specific personal jurisdiction analysis, "[a]ppellants must carry the burden of proving the unavailability of an alternative forum." *Olsen by Sheldon v. Gov't of Mexico*, 729 F.2d 641, 651 (9th Cir. 1984).  Plaintiffs never explain why Germany is not an alternative, beyond asserting that Roe cannot travel.  They instead seek to shift the burden to Lufthansa, stating that "Lufthansa does not enlighten us (or the District Court)" how "Germany is an adequate alternative forum."  However, it is on Plaintiffs to show why Germany is not a viable forum, and they have failed to do so.

Ultimately, few of the factors weigh strongly either way. The analysis comes down to whether the imposition on foreign countries' sovereignty, when weighed against the importance of California to Plaintiffs, constitutes a "compelling case" against jurisdiction. *Ballard*, 65 F.3d at 1502. Though I do not discount the difficulties Plaintiffs would face in litigating this case abroad, I believe the conflict with Saudi Arabia's sovereignty over conduct that occurred within Saudi Arabia is compelling enough to render the exercise of jurisdiction unreasonable.

## IV

Because the connection to California here is tenuous at best, I respectfully dissent.